IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA AT EVANSVILLE

| | |
|---|---|
| FREEDOM ORDNANCE MFG., INC. ) | |
| 512 Grace Way ) | |
| Chandler, Indiana 47610 ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|   v. ) | Case No. 3:16-cv-243 |
| ) | |
| THOMAS E. BRANDON ) | |
| Director ) | |
| Bureau of Alcohol Tobacco ) | |
| Firearms and Explosives, ) | |
| ) | |
|     Defendant. ) | |

## COMPLAINT

Now comes the Plaintiff, Freedom Ordnance Manufacturing, Inc., by and through counsel, and for its complaint against the Defendant, Thomas E Brandon, Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives, states as follows:

1. This is an action for judicial review and for declaratory relief regarding whether a device designed to electronically assist in the resetting of the trigger of a firearm rather than in any way assisting in initiating the firing sequence of a firearm, is properly classified as a "machinegun" as that term is defined in 26 U.S.C. § 5845(b).

## PARTIES

2. Freedom Ordnance Manufacturing, Inc. ("Freedom") is an Indiana corporation with its principal place of business in Chandler, Indiana. Freedom is a federally licensed firearms manufacturer engaged in the business of manufacturing firearms and firearm related items.

3	Defendant, Thomas E. Brandon is the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which administers and enforces the federal Gun Control Act and the National Firearms Act. The Firearms Technology Industry Services Division ("FTISD") is a component of ATF which the Director supervises, directs, and oversees.

## JURISDICTION AND VENUE

4.	This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331, as it arises under the Constitution and laws of the United States, specifically the National Firearms Act ("NFA"), 26 U.S.C. § 5801, *et seq.*, and its related regulations.

5.	Venue is proper in the Southern District of Indiana, as Plaintiff's principal place of business is located within the Southern District of Indiana.

## STATUTORY BACKGROUND

6.	The Gun Control Act ("GCA"). 18 U.S.C. § 921, *et seq.*, regulates and restricts firearms.

7.	The NFA also regulates and restricts firearms, including machineguns.

8.	Under 26 U.S.C. § 5845(b), the NFA defines a "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

## FACTS

9. Freedom designed an Electronic Reset Assist Device ("ERAD") for commercial sale to the general public.

10. The ERAD is composed of a mechanism that floats inside the raceway of the trigger housing and which rides on a cam that is attached to the electric motor in the grip housing. As the motor turns, the cam lobe pushes the trigger reset bar forward.

11. The ERAD does not continually engage the trigger during its operation.

12. Instead, the ERAD engages the trigger finger which, when consciously and deliberately pulled, engages the trigger.

13. The sole function of the ERAD is to push the trigger finger forward when the firing sequence is initiated, rather than pull the trigger rearward.

14. Because it is a completely self-contained system the ERAD does not engage the hammer or disconnector.

15. Once the user consciously and deliberately pulls the trigger and simultaneously engages the electric switch, the ERAD activates the trigger finger reset mechanism, and the reset bar applies only forward tension to the trigger finger.

16. The ERAD cannot under any circumstances apply rearward tension to the trigger finger, the trigger itself, and/or any other part of the operating mechanism. Thus, the shooter pulls the trigger sufficiently to activate the firing sequence, and the trigger finger reset bar then propels the trigger finger forward away from the firearm trigger, actually clearing the trigger such that the trigger moves fully forward and there is a gap between the reset bar and the trigger itself.

17. The ERAD does not alter the trigger, hammer, and disconnector of a firearm in any way, and such continue to function exactly as originally designed.

18. Because the shooter is consciously and deliberately applying rearward pressure to fire the firearm, the shooter must similarly overcome the forward pressure of the trigger finger reset bar to fire the weapon.

19. As long as the shooter continues to apply conscious and deliberate rearward pressure to the reset bar, it will continue to fire one shot per pull of the trigger.

20. The trigger finger reset bar is not the trigger, nor can it activate the firing sequence.

21. Only the shooter's conscious and deliberate pull of the reset bar that subsequently engages the trigger that causes the weapon to fire and the ERAD cannot be made to function any other way.

22. The ERAD is merely a trigger finger reset device that is neither affixed to the trigger nor can function on the trigger. It simply pushes the shooter's trigger finger off of the trigger allowing the natural reflex of pulling the trigger to happen in a more rapid movement.

23. Freedom submitted samples of the ERAD along with videos and other materials to FTISD as part of an evaluation request seeking confirmation that the ERAD is neither a firearm nor a machinegun as defined under applicable law.

24. By letter dated October 27, 2016, FTISD issued a determination that the ERAD constitutes a machinegun, determining that the ERAD is "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)."

## COUNT I
### 5 U.S.C. 704 Judicial Review of Classification

25. Paragraphs 1-24 are incorporated as if restated in full herein.

26. "Any person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *See,* 5 U.S.C. § 702. Further, "final agency action for which there is no other adequate remedy in court [is] subject to judicial review." *See,* 5 U.S.C. § 704.

27. "'[A]gency action' includes the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act …" *See,* 5 U.S.C. § 551(13). A "rule" is "the whole or a part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy …" *See,* 5 U.S.C. § 551(4).

28. The FTISD classification in its letter of October 27, 2016 constitutes a "rule" as defined in 5 U.S.C. § 551(4) and is "agency action" as defined in 5 U.S.C. § 551(13). Such classification constitutes "final agency action" because it was the consummation of ATF's decision-making process concerning whether the ERAD devices classified as a "machinegun" as defined in 26 U.S.C. 5845(b), in that it was not of a merely tentative or interlocutory nature and because it is an action by which rights or obligations have been determined.

29. The FTISD letter of October 27, 2016 demonstrates that FTISD failed to articulate a satisfactory explanation for its classification and failed to examine the relevant data. FTISD concluded erroneously and against the evidence that the ERAD is "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)."

## COUNT II
## 28 U.S.C. 2201(a) Declaratory Judgment

30. Paragraphs 1-24 are incorporated as if restated in full herein.

31. Contrary to FTISD's determination, the ERAD is not "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)." Rather, a semi-automatic firearm equipped with the ERAD continues to fire only as a result of backward force by the operator's trigger finger, and still only fires one shot for each single function of the trigger.

32. 28 U.S.C. § 2201(a) provides in pertinent part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declarations hall has the force and effect of a final judgment or decree and shall be reviewable as such.

33. There is an actual controversy between the parties herein concerning the classification of the ERAD as a "machinegun" under 26 U.S.C. § 5845(b).  Accordingly, the device at issue should be declared not to be "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)."

WHEREFORE, Freedom Ordnance Manufacturing, Inc. prays that this Court: 1) hold unlawful and set aside FTISD's determination as being arbitrary and capricious, and not in accordance with law, 2) declare that the ERAD grip is not machinegun as defined in 25 U.S.C. § 5845(b), and 3) award such other relief, including costs and attorney's fees

6

under the Gun Control Act, the National Firearms Act, the Equal Access to Justice Act, or any other basis available under the law, as appropriate

DATED: December 13th, 2016

        Respectfully submitted,

        KIGHTLINGER & GRAY, LLP

By *s/Brent R. Weil*_____
   Brent R. Weil, #12046-82
   bweil@k-glaw.com
   7220 Eagle Crest Boulevard
   Evansville, IN 47715
   Telephone: (812) 474-4400
   Facsimile: (812) 474-4414
   ATTORNEY FOR PLAINTIFF,
   FREEDOM ORDNANCE MFG., INC.

161655\3600528-1