UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| FREEDOM ORDNANCE MFG., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-243 RLY-MPB |
| | ) | |
| THOMAS E. BRANDON | ) | |
| DIRECTOR | ) | |
| BUREAU OF ALCOHOL TOBACCO | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, Freedom Ordnance Mfg., Inc. ("Freedom"), by and through

counsel, to submit the following brief in support of its motion for summary judgment on its

claims against the Defendant, Thomas Brandon, Director of the Bureau of Alcohol Tobacco

Firearms and Explosives ("ATF").

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS                                                                        ii

TABLE OF AUTHORITIES                                                                     iii

INTRODUCTION                                                                             1

STATEMENT OF UNCONTESTED FACTS                                                           2

STATEMENT OF FACTS                                                                       3

SUMMARY JUDGMENT STANDARD                                                                6

ARGUMENT                                                                                 7

I.      TO BE A MACHINEGUN, THE ERAD MUST ENABLE A FIREARM TO            7
        FIRE MORE THAN ONE SHOT BY A SINGLE FUNCTION OF THE TRIGGER

II.     THE ERAD DOES NOT ENABLE A FIREARM TO FIRE MORE THAN ONE         8
        SHOT PER SINGLE FUNCTION OF THE TRIGGER.

III.    FREEDOM IS ENTITLED TO SUMMARY JUDGMENT ON ITS 5 U.S.C. 704      10
        PETITION FOR JUDICIAL REVIEW OF FTISB'S CLASSIFICATION RULING.

        A.      Freedom Is Entitled To Summary Judgment On Its 5 U.S.C. 704 Petition    10
                for Judicial Review of FTISB's Classification Ruling.

        B.      Freedom Is Entitled To Summary Judgment On Its 28 U.S.C. § 2201(A)      12
                Declaratory Judgment Claim.

CONCLUSION                                                                               13

Certificate of Service                                                                   14

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page**

*Akins v. United States,* 312 Fed. Apx. 197 (11th Cir. 2009)                                     7, 11

*Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104 (1st Cir. 1997)                         6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)                                                    6

*Estrada v. Rhode Island*, 594 F.3d 56 (1st Cir. 2010)                                             6

*Sig Sauer v. Jones*, 826 F.3d 598 (1st Cir. 2016)                                               7

*Staples v. United States,* 511 U.S. 600 (1994)                                                    7, 11

**Statutes**

5 U.S.C. § 551                                                                                     10, 11

5 U.S.C. § 704                                                                                      10

18 U.S.C. § 921(a)(23)                                                                             3

18 U.S.C. § 922(d)(2)(B)                                                                           13

28 U.S.C. § 2414(d)                                                                                13

26 U.S.C. § 5845(b)                                                                                2, 3, 6

**Rules**

Fed.R.Civ.P. 56(c)                                                                                 6

Evid. R. 803(8)                                                                                    3

Evid. R. 902(1)                                                                                    3

Loc. R. 5-2(a)(3)                                                                                  5

## INTRODUCTION

This case involves the question of whether a particular firearm accessory constitutes a "machinegun" within the meaning of the National Firearms Act.  The question is one of threshold importance to Freedom Ordnance, Mfg., Inc. ("Freedom"), because it will determine the success or failure of Freedom's business plan.  That is, if the item constitutes a "machinegun," then there is no point in Freedom making it, because new "machineguns" can only be sold to government customers who would never buy an accessory such as Freedom's since they can simply purchase an inexpensive, actual machinegun/fully automatic firearm.

If, on the other hand, Freedom's invention is not a "machinegun," then there is expected to be a robust consumer demand for the device.  For non-governmental customers, machineguns are incredibly expensive and rare (though still absolutely legal), because consumers may only buy machineguns from a limited pool of firearms made prior to 1986.  Given this, consumers have desired, and manufacturers have provided, a multitude of products which serve to enhance the operation of a semi-automatic firearm.  The fact is, almost as long there have been guns, there have been people tinkering with how to make them more useful for their lawful users, and that is all Freedom has done here via what it believes to be the proverbial "better mousetrap".

Following Freedom's submission of a prototype of its product and supporting materials, ATF rendered the classification ruling that is the subject of this lawsuit. Other than merely submitting materials to ATF and awaiting a ruling, there has been to date, no opportunity for Freedom to be heard and to challenge ATF's conclusions -- e.g., no formal/informal hearing, no ALJ review, etc. Thus, the present action is Freedom's first opportunity to be heard concerning whether ATF's classification ruling was contrary to law and to respond to ATF's erroneous conclusions and inconsistent application of the law to support its classification ruling.

**STATEMENT OF UNCONTESTED FACTS**

1.      Freedom is an Indiana corporation with its principal place of business in Chandler, Indiana. Freedom is a manufacturer engaged in the business of manufacturing firearm accessories.

2.      ATF administers and enforces the federal Gun Control Act and the National Firearms Act.  ATF's Firearms Technology Industry Services Branch (hereinafter "FTISB") is a component of ATF which the Director supervises, directs, and oversees.

3.      26 U.S.C. § 5845(b) defines the term "machinegun" as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

4.      One of the functions of "FTISB" it to render opinions regarding the classification of suspected illegal firearms and newly designed firearms.

5.      Freedom submitted samples of an Electronic Reset Assistance Device ("ERAD") along with videos and other materials to FTISB as part of an evaluation request seeking confirmation that the ERAD is neither a firearm nor a machinegun as defined under applicable law. AR 1-17, 18-46.

6.      The ERAD does not apply any rearward pressure on the trigger, but rather it pushes the firearm operator's trigger finger forward, allowing the firearm's trigger to reset naturally and more quickly and preparing the firearm for a subsequent shot to be fired.

7.      FTISB classified the ERAD as a machinegun.

8.      FTISB's classification letter of October 27, 2016 constitutes a final agency action.

9.      FTISB has previously classified trigger reset assistance devices as non-machineguns where the device merely assists in resetting the trigger and does not enable a firearm to shoot more than a single shot per single function of the trigger.  Examples of such classification rulings include:

| Exhibit[1] | Classification | Description |
|---|---|---|
| A<br><br>(AR 0332-0338) | 907010:MRC 3311/303318 7/24/2015 | "Bump fire" grip deemed not to be a machinegun.  The device operates such that "as a shot is fired, an intermediate amount of pressure is applied to the handguard with the support hand, and the receiver assembly will recoil rearward for enough to allow the trigger to mechanically reset.  Continued intermediate pressure applied to the handguard will push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. … each shot being fired by a single function of the trigger." |
| B | 903050:MRC 3311/301071 10/31/2013 | Positive reset trigger deemed not to be machinegun.  The device "applies force to the trigger, forces the shooters' finger forward, and allows the trigger to reset rapidly." Because the firearm continued to function only semi-automatically, ATF correctly concluded that it "is not a part or combination of parts that will convert a semiautomatic firearm into a machinegun." |
| C | 903050:MSK 3311/2011-502 5/25/2011 | "Bump fire" stock deemed not to be a machinegun.  "Since [] device does not initiate an automatic firing cycle by a single function of the trigger, FTB finds that it is NOT a machinegun under the NFA, 26 U.S.C. 5845(b), or the GCA, 18 U.S.C. 921(a)(23)." |

---

[1]     Exhibits A, B, and C are classification letters issued by ATF's Firearms Technology Branch.  As signed government records, they are self-authenticating under Evid. R. 902(1) and non-hearsay under Evid. R. 803(8).

3

## STATEMENT OF FACTS

Freedom is a manufacturer based out of Chandler, Indiana and is engaged in the business of manufacturing firearm accessories. *See,* Exhibit D, ¶ 2 (Winge Affidavit). Freedom designed an Electronic Reset Assist Device ("ERAD") for commercial sale to the general public. *Id.,* ¶ 3. The ERAD is a firearm accessory that, when attached to a firearm, assists in the reset of a firearm's trigger after the trigger has been pulled by the firearm's user. *Id.,* ¶ 4. The ERAD is composed of a mechanism that floats inside the raceway of the trigger housing and which rides on a cam that is attached to the electric motor in the grip housing. *Id.,* ¶ 5, AR 0020. As the motor turns, the cam lobe pushes the trigger reset bar forward. Ex. D*,* ¶ 5, Exhibit E, ¶ 9, AR 0020. The ERAD engages the trigger finger which, when consciously and deliberately pulled, engages the trigger. Ex. D*,* ¶ 7, Ex. E, ¶ 10, AR 0020.

The sole function of the ERAD is to push the trigger finger forward off of the gun's trigger when the firing sequence is initiated; it does not and cannot pull the trigger rearward. Ex. D*,* ¶ 8. ¶ 10, AR 0020. Because it is a completely self-contained system that does not engage the gun's hammer or disconnector, once the user consciously and deliberately pulls the trigger and simultaneously engages the electric switch, the ERAD activates the trigger finger reset mechanism, and the reset bar applies only forward tension to the trigger finger. Ex. D, ¶¶ 9-10, Ex. E ¶¶ 11-12, AR 0020. The ERAD cannot under any circumstances apply rearward tension to the trigger finger, the trigger itself, and/or any other part of the operating mechanism. Ex. D, ¶ 11, Ex. E, ¶ 12, AR 0021. Thus, the shooter pulls the trigger sufficiently to activate the firing sequence, and the trigger finger reset bar then propels the trigger finger forward away from the firearm trigger, actually clearing the trigger such that the trigger moves fully forward and there is a gap between the reset bar and the trigger itself. *Id.*

4

The ERAD does not alter the trigger, hammer, and disconnector of a firearm in any way, and such continue to function exactly as originally designed. Ex. D, ¶ 12, Ex. E, ¶ 13. AR 0021. Because the shooter is consciously and deliberately applying rearward pressure to fire the firearm, the shooter must similarly overcome the forward pressure of the trigger finger reset bar to fire the weapon. Ex. D, ¶ 13, Ex. E, ¶ 14, AR 0021. As long as the shooter continues to apply conscious and deliberate rearward pressure to the reset bar, it will continue to fire one shot per pull of the trigger. Ex. D, ¶ 14, Ex. E, ¶ 15, AR 0021. The trigger finger reset bar is not the trigger, nor can it activate the firing sequence. Ex. D, ¶ 15, Ex. E, ¶ 16, AR 0021. Only the shooter's conscious and deliberate pull of the reset bar that subsequently engages the trigger that causes the weapon to fire and the ERAD cannot be made to function any other way. Ex. D, ¶ 16, Ex. E, ¶ 16, AR 0021. The ERAD is merely a trigger finger reset device that is neither affixed to the trigger nor can function on the trigger. Ex. D, ¶ 17, AR 0021. It simply pushes the shooter's trigger finger off of the trigger allowing the natural reflex of pulling the trigger to happen in a more rapid movement. Ex. D, ¶ 17, AR 0021. An AR-type firearm with the ERAD installed can achieve only between a 400 to 450 rounds per minute rate of fire. Ex. E, ¶ 17. AR 0021. In comparison, both the TacCon trigger and the Slide Fire, devices that assist with trigger reset and are not classified as machineguns by ATF, advertise a 600+ rounds per minute rate of fire. *Id*, AR 0021.

Freedom submitted samples of the ERAD along with videos and other materials to ATF's Firearms Technology Industry Services Branch ("FTISB") as part of an evaluation request seeking confirmation that the ERAD is neither a firearm nor a machinegun as defined under applicable law. Ex. D, ¶ 18; AR 0047 (submitted by FTISB as an MP4 video file). Freedom's video, demonstrates the ERAD in comparison with ATF-approved trigger reset devices and

includes slow-motion video illustrating that the ERAD merely acts as a trigger reset assistance device and cannot enable a firearm to discharge more than a single round per single function of the trigger. *See,* AR 0047 (13:10 on video shows approved bumpfire device, and 13:25 on video shows the ERAD).

By letter dated October 27, 2016, FTISB issued a determination that the ERAD constitutes a machinegun, determining that the ERAD is "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)." Ex. D, ¶ 19, AR 0070-82.  Prior ATF classification rulings demonstrating ATF's application of the law to other similar devices are attached hereto as Exhibits A, B, and C.

## SUMMARY JUDGMENT STANDARD

Summary judgment is only proper when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986).  This standard was developed to provide parties with a way to avoid the delay, expense, and uncertainty of a trial when material facts are not in dispute. Because a court may not engage in fact finding when it decides a summary judgment motion, ambiguous evidence, even if it is undisputed, ordinarily must be construed in favor of the nonmoving party. *See, Estrada v. Rhode Island*, 594 F.3d 56, 62 (1st Cir. 2010). In administrative law cases, however, "[t]his rubric has a special twist." *See, Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997). If the decision will be based on the administrative record, the issue before the court will ordinarily be the legal question as to

whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See, Sig Sauer v. Jones*, 826 F.3d 598, 601 (1st Cir. 2016).

**ARGUMENT**

**I.      TO BE A MACHINEGUN, THE ERAD MUST ENABLE A FIREARM TO FIRE MORE THAN ONE SHOT BY A SINGLE FUNCTION OF THE TRIGGER.**

"A machinegun is a weapon that fires 'automatically more than one shot, without manual reloading, by a single function of the trigger.'" *See, Akins v. United States,* 312 Fed. Apx. 197, 200 (11th Cir. 2009); *citing* 26 U.S.C. § 5845(b).  ATF has interpreted "single function of the trigger" to mean a "single pull of the trigger," and such has been found to consonant with the statute and legislative history behind such. *Id., citing, Staples v. United States,* 511 U.S. 600, 602 (1994) (The terms 'automatic' and 'fully automatic' refer to a firearm that fires repeatedly with a single pull of the trigger. That is, once its trigger is depressed, the firearm will automatically continue to fire until its trigger is released or the ammunition is exhausted. Such weapons are 'machineguns' within the meaning of the Act.)

In addition to completed firearms, federal law includes within the definition of machinegun any "combination of parts designed and intended for use in converting a weapon into a machinegun." *See,* 26 U.S.C. 5845(b).  It is this portion of the definition that is at issue in this case.  In short, the ERAD is not a machinegun unless it is "designed and intended for use in converting a weapon into a machinegun."  That is, in order to be a machinegun, the ERAD must enable a firearm to shoot more than one shot per single pull of the trigger.  If Freedom's ERAD merely assists in quickly the re-setting of the trigger such that it does not enable a firearm to shoot more than one shot per single function of the trigger, the ERAD cannot be deemed a machinegun under federal law.   That is, a machinegun determination must be based on engineering and operation, not speed.

7

**II.    THE ERAD DOES NOT ENABLE A FIREARM TO FIRE MORE THAN ONE SHOT PER SINGLE FUNCTION OF THE TRIGGER.**

For ATF to properly classify the ERAD as a machinegun, there must be actual evidence that it enables a firearm to shoot more than one shot per single function of the trigger, rather than just an unexplained bias against electronic devices.  However, no such actual evidence exists.  In fact, what is clear is that the ERAD employs the same basic principles as other devices that ATF has declared not to be machineguns.  That is, ATF's approved devices -- Exhibits A, B, and C -- combine an operator's force on the trigger with a non-human energy source to alleviate the pressure of the shooter's finger on the trigger to allow the trigger to reset rapidly.

The "bump fire" stock approved in Exhibit A allows movement within the receiver assembly so that, as long as the operator applies "an intermediate amount of pressure … to the handguard with the support hand," the "receiver assembly will recoil rearward enough to allow the trigger to manually reset." That is, the device separates the trigger from the operator's trigger finger to aid in resetting.  The firearm is then fired again through "continued intermediate pressure" applied by the operator to cause the trigger to "re-contact" the trigger finger allowing a subsequent shot to be fired. *See,* Ex. A.  This is similar operation to the "bump fire" stock approved in Exhibit C.  Both of these devices use force to alleviate the pressure of the operator's trigger finger from the trigger through rearward movement of the firearm's receiver assembly allowing reset and subsequent firing by "continued" pressure by the firearm's operator.  *See,* Ex. A and C. These devices are not machineguns because, when attached to a semi-automatic firearm, such still fire only one shot per single function of the trigger just like the ERAD. *Id.*

Likewise, the trigger reset device approved in Exhibit B (the TacCon "3MR trigger") is also not a machinegun. The 3MR trigger, as with Exhibit A and Exhibit C, uses force to separate the firearm operator's trigger finger from the trigger to allow the trigger to reset without the

opposing force of the operator's trigger.  Just as with the ERAD, rather than doing so through rearward movement of the firearm's receiver assembly, the separation is accomplished though application of forward force directly to the operator's trigger finger. With regard to the 3MR trigger, ATF noted that "because the firearm continued to function only semi-automatically," ATF correctly concluded that it "is not a part or combination of parts that will convert a semiautomatic firearm into a machinegun." *See,* Ex. B.  The basic functional difference between the approved 3MR trigger and the ERAD is that the forward force applied by the 3MR trigger is generated by the firearm's inertia, whereas the forward force applied by the ERAD is produced by battery power.  The type of power employed to facilitate reset is not a factor in making a determination that a reset device is or is not a machinegun, yet such is the key factor distinguishing the ERAD from the 3MR for purposes of ATF's classification

Here, ATF has ignored its prior rulings and misclassified the ERAD as a machinegun. Rather than focus on the fact that, when installed, the ERAD does nothing other than push the firearm operator's trigger finger forward enabling the firearm's trigger to reset -- the only issue that matters -- ATF instead attempts to make a novel and irrelevant distinction by calling the ERAD device the "primary trigger" and the firearm's actual trigger the "secondary trigger."  To ATF, the significance of this is that the operator may apply constant rearward force on the ERAD, which ATF argues constitutes a single pull of the "primary trigger."  What ATF ignores, however, is that even with continued pressure on the ERAD surface, a firearm will not discharge a second round until the ERAD has moved forward enough for the firearm's trigger (which ATF has now dubbed the "secondary trigger") and all of the actual function parts of the firearm necessary to fire a single round to re-set.  Moreover, even assuming ATF's novel "two trigger" analysis is valid, by its very nature the ERAD (what ATF has dubbed the "primary trigger"), like

9

the actual trigger, necessarily moves forward sufficient to require a separate pull for each firing of the gun.[2]

It is not clear why ATF moved away from long-standing and sensible application of very clear law -- "one shot per one function of the trigger" -- but redefining "trigger" and reimagining what it means for a trigger to function is unsupportable under the law.  Nonetheless, under any interpretation, a semi-automatic firearm with the ERAD attached cannot fire more than one shot per function of the trigger irrespective of whether the "trigger" at issue is the actual trigger or the ERAD itself, which must be depressed for each shot.

III.     **FREEDOM IS ENTITLED TO SUMMARY JUDGMENT.**

A.     **Freedom Is Entitled To Summary Judgment On Its 5 U.S.C. 704 Petition for Judicial Review of FTISB's Classification Ruling.**

Freedom is entitled to summary judgment on its 5 U.S.C. 704 petition for judicial review of FTISB's erroneous ruling that the ERAD is a machinegun.  "Any person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *See,* 5 U.S.C. § 702. Further, "final agency action for which there is no other adequate remedy in court [is] subject to judicial review." *See,* 5 U.S.C. § 704.  "'[A]gency action' includes the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act …" *See,* 5 U.S.C. § 551(13).  A "rule" is "the whole or a part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy …" *See,* 5 U.S.C. § 551(4).

---

[2]     Unlike an actual machinegun that would permit an operator to simply pull the trigger back and continue firing rounds until the trigger was released or the firearm was out of ammunition, the ERAD operates to force the release of the trigger.  Assuming one were strong enough to overcome the forward pressure of the ERAD and merely hold the trigger back -- as with an actual machinegun – the firearm would discharge only one round.

The FTISB classification in its letter of October 27, 2016 constitutes a "rule" as defined in 5 U.S.C. § 551(4) and is "agency action" as defined in 5 U.S.C. § 551(13). Such classification constitutes "final agency action" because it was the consummation of ATF's decision-making process concerning whether the ERAD devices classified as a machinegun as defined in 26 U.S.C. 5845(b), in that it was not of a merely tentative or interlocutory nature and because it is an action by which rights or obligations have been determined.  The FTISB letter of October 27, 2016 demonstrates that FTISB failed to articulate a satisfactory explanation for its classification of the ERAD as a machinegun.  Specifically, FTISB concluded against the evidence that the ERAD is "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)."  FTISB's conclusion is erroneous because a semi-automatic firearm to which the ERAD is installed remains able to fire only one round per single function of the trigger and the firearm's trigger function cycles with each pull of the trigger.

The ERAD is incapable of pulling the trigger itself, as its only function is to push the operator's trigger finger forward and into position for the operator to, if he so chooses, pull the trigger again to initiate another single firing of the firearm.  As a single function of the trigger is equivalent to a single pull of the trigger, a firearm that discharges one round for each pull of the trigger is not a machinegun. *See, Akins v. United States,* 312 Fed. Apx. 197, 200 (11th Cir. 2009); *Staples v. United States,* 511 U.S. 600, 602 (1994).  ATF's determination is directly contrary to prior determinations wherein it has held that a device that increases the rapidity of an operator's ability to pull the trigger of a firearm by way of forward force on the operator's trigger finger yet resulting in the firing of only one round per single function of the trigger is not a machingun. *See,* Exhibits A, B, and C (ATF Rulings) and Ex. E, ¶ 17.

Because a semi-automatic firearm with the ERAD installed is does not fire more than one round per single function of the trigger, an ERAD is not "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)." ATF's classification is arbitrary, capricious, and contrary to law, and should therefore be overturned.

**B.     Freedom Is Entitled To Summary Judgment On Its 28 U.S.C. § 2201(A) Declaratory Judgment Claim.**

Freedom is entitled to summary judgment on its 28 U.S.C. § 2201 claim for declaratory judgment.  28 U.S.C. § 2201(a) grants this Court to declare Freedom's rights under the law with regard to its manufacture and sale of the ERAD as a non-machinegun:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declarations shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Here, there is an actual controversy between the parties herein concerning FTISB's classification of the ERAD as a machinegun under 26 U.S.C. § 5845(b).

As set forth above, a semi-automatic firearm equipped with the ERAD continues to fire only as a result of backward force by the operator's trigger finger, and still only fires one shot for each single function of the trigger.  As such, the ERAD is not "a combination of parts designed and intended solely and exclusively for use in converting a weapon into a machinegun and thus a 'machinegun' as defined in 26 U.S.C. 5845(b)."  Freedom should be free to manufacture and sell the ERAD without the restrictions imposed upon machineguns under federal law, and requests a declaration that the ERAD is not a machinegun.

12

## **CONCLUSION**

The ERAD is not a machinegun as that term is defined by law as it does not enable a semi-automatic firearm to fire more than one round per single function/pull of the trigger.  ATF's classification letter does not set forth any factual basis to support its classification ruling, and ATF's classification should be overturned as it is arbitrary, capricious, and contrary to law. Accordingly,   Freedom respectfully requests that this court grant its motion for summary judgment and award any further relief deemed just and appropriate including, but not limited to costs and attorney fees recoverable under 18 U.S.C. § 922(d)(2)(B),  28 U.S.C. § 2414(d), or any other authority.

DATED: June 2, 2017

/s/ Timothy R. Rudd

_____

Scott L. Braum *pro hac vice*
*Email*: slb@braumlaw.com
Timothy R. Rudd *pro hac vice*
*Email*: trr@braumlaw.com
SCOTT L. BRAUM & ASSOCIATES, LTD.
812 East Franklin Street, Suite C
Dayton, OH 45459
*Telephone*: (937) 396-0089
*Facsimile*: (937) 396-1046

Brent R. Weil, #12046-82
*Email*: bweil@k-glaw.com
7220 Eagle Crest Boulevard
Evansville, Indiana 47715
*Telephone:*     (812) 474-4400
*Facsimile:*     (812) 474-4414

ATTORNEYS FOR PLAINTIFF,
FREEDOM ORDNANCE MFG., INC.

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Brief in Support of Its Motion for Summary Judgment was served upon all counsel of record electronically via ECF on June 2, 2017.

Josh J. Minkler
Shelese Woods
shelese.woods@usdoj.gov


/s/Brent R. Weil
Brent R. Weil


KIGHTLINGER & GRAY, LLP
7220 Eagle Crest Boulevard
Evansville, IN 47715
Telephone: (812) 474-4400
Facsimile: (812) 474-4414

161655\3876237-1

14