# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

FREEDOM ORDNANCE MFG., INC., )
)
Plaintiff, )
)
v. ) CASE NO. 3:16-cv-243
)
THOMAS E. BRANDON )
DIRECTOR )
BUREAU OF ALCOHOL TOBACCO )
FIREARMS AND EXPLOSIVES, )
)
Defendant. )

## AFFIDAVIT OF RICHARD VASQUEZ

I, Richard Vasquez, being duly sworn according to law, do depose and state as follows:

1. My name is Richard Vasquez and I am the principal of Rick Vasquez Firearms, LLC based out of Winchester, Virginia.

2. Following a military career that spanned over twenty years, I began a fifteen-year career with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

3. From June of 1999 to August 2011, my work with ATF was within the Firearms Technology Branch ("FTB"), which is now the Firearms and Ammunition Technology Division.

4. Within FTB, I served both as the Assistant Branch Chief, as well as the Acting Chief.

5. One of the roles of FTB during my tenure, providing classification rulings on items submitted for consideration, is the same as that of the Firearms Technology Industry Services Branch ("FTISB") presently.

1

6.  I am familiar with the Gun Control Act of 1968, the National Firearms Act of 1934, and ATF's rules and regulations related to such.

7.  Since retiring from ATF in September 2014, I have worked as a consultant to the firearms industry and private sector, providing services related to firearms identification and classification with regard to the GCA and NFA.

8.  I was asked to provide an opinion and analysis with regard to the classification of the item at issue in this case, Freedom Ordnance Mfg., LLC's Electronic Reset Assist Device ("ERAD"). Specifically, I was asked to examine the ERAD and its function to determine whether it should be classified as a "machinegun" under the NFA.

9.  The ERAD is composed of a mechanism that floats inside the raceway of the trigger housing and which rides on a cam that is attached to the electric motor in the grip housing. As the motor turns, the cam lobe pushes the trigger reset bar forward.

10. The ERAD engages the trigger finger and, when consciously and deliberately pulled, engages the trigger. In fact, the only function of the ERAD is to push the trigger finger forward, when the firing sequence is initiated, rather than pull the trigger rearward.

11. As the ERAD functions to do nothing more than push the trigger finger forward, the firearm will only fire a second round as a result of the direct force of the trigger finger initiating the firing sequence again.

12. Once the user consciously and deliberately pulls the trigger and simultaneously engages the electric switch, the ERAD activates the trigger finger reset mechanism, and the reset bar applies only forward tension to the trigger finger.

13. The ERAD cannot under any circumstances apply rearward tension to the trigger finger, the trigger itself, and/or any other part of the operating mechanism. Thus, the shooter

pulls the trigger sufficiently to activate the firing sequence, and the trigger finger reset bar then propels the trigger finger forward away from the firearm trigger, actually clearing the trigger. Accordingly, the trigger, hammer, and disconnector continue to function exactly as originally designed.

14. Because the shooter is consciously and deliberately applying rearward pressure to fire the firearm, the shooter must similarly overcome the forward pressure of the trigger finger reset bar to fire the weapon.

15. As long as the shooter continues to apply conscious and deliberate rearward pressure to the reset bar, it will continue to fire one shot per pull of the trigger.

16. The trigger finger reset bar is not the trigger, nor can it activate the firing sequence. Rather, it is the shooter's conscious and deliberate pull of the trigger directly causes the weapon to fire.

17. An AR firearm with the ERAD installed can achieve only between a 400 to 450 rounds per minute rate of fire. In comparison, both the TacCon trigger and the Slide Fire, devices that assist with trigger reset and are not classified as machineguns by ATF, advertise a 600+ rounds per minute rate of fire.

18. The definition of a machinegun and how ATF classifies devices/firearms as machineguns is well established.

19. As defined in 26 United States Code, Chapter 53, section 5845(b), the term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in

converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

20. As a result, a weapon that when loaded and you pull the trigger it shoots continuously with one conscious pull of the trigger, it is a machinegun capable of automatic fire. Installation of the ERAD does not enable a firearm to shoot more than one shot by a single function of the trigger.

21. If a firearm is made as a machinegun from the factory or modified into a machinegun configuration with design features that allow it to shoot automatically, it is a machinegun. For instance, an M240 or M249 was designed by the manufacturer to have the capability of shooting automatically, and these types of weapons have design features different from semiautomatic variants. These receivers of machineguns will generally accept different parts from a semiautomatic version as in a machinegun sear, or they are straight blowback devices that once you pull the trigger and a cartridge fires, through the inertia of a bolt the firearm cycles and fires again. The ERAD does not fall within this portion of the definition of machinegun.

22. A machinegun may also consist of a firearm that can be readily restored to shoot automatically. This would encompass a weapon that previously shot automatically because of design features that allowed the weapon to shoot automatically, but in its current condition, does not shoot automatically. If, with minor work, it can be put back into the condition in which it can shoot automatically, then such a weapon would be properly classified as a machinegun. The ERAD does not fall within this portion of the definition of machinegun.

23. A firearm receiver with the design features of a machinegun is a machinegun all by itself, even without all of the other parts necessary to actually make the gun fire. Those

features are the mechanical design that is imparted into the receiver that allows the firearm to shoot automatically. For example, if an AK47 is stripped and all of the parts are thrown away, the receiver still has the design features to accept an automatic sear, which is the key component to allow automatic fire. As a result, the receiver itself is classified as a machinegun. Similarly, taking a semiautomatic variant receiver without these design features and modifying it into the same configuration as an AK47 would change the classification of the semiautomatic receiver to a machinegun receiver. The ERAD does not fall within this portion of the definition of machinegun.

24. The term "machinegun" includes any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun. This provision refers to items commonly called conversion devices. These are generally a modified part of a semiautomatic weapon or a fabricated part that causes the weapon to function as a machinegun. Since the only purpose of such parts is to make a semiautomatic weapon shoot automatically they are classified as machineguns. The ERAD does not fall within this portion of the definition of machinegun.

25. The term "machinegun" includes any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. There are circumstances in which an individual is in possession of everything it takes to fabricate a machinegun but might not actually have put the parts together yet. While parts or plans for a machinegun are not themselves prohibited, a combination of parts, components, plans, and tools from which a machinegun could be assembled can also be considered a machinegun. Possession of the ERAD in addition to a firearm that is not already classified as a machinegun does not fall within this portion of the definition of machinegun.

26. The ERAD is merely a trigger finger reset device that uses battery power to force the reset device, along with the trigger finger, forward "completely" off of the trigger in a rapid manner.

27. The ERAD allows the rearward pressure created by the pull of the trigger to rapidly come away from the trigger.

28. With no opposing force on the trigger, the ERAD allows the trigger to reset to the firing position rapidly and under normal spring tension.

29. When using the ERAD, the natural, conscious, and deliberate force of the shooter's finger being applied rearward pulls the trigger again.

30. The above sequence is repeated allowing the shooter to pull the trigger approximately 400 times per minute firing only one round per single function of the trigger.

31. Applying the clear language of the law, in addition to prior classification rulings such as those attached here to as Exhibit A, when attached to a semiautomatic firearm, the ERAD does not change the character of semiautomatic fire, and FTISB improperly classified the ERAD as a machinegun.

* * * * REMAINDER OF PAGE INTENTIONALLY LEFT BLANK * * * *

_____
Richard Vasquez

STATE OF ~~INDIANA~~ VIRGINIA )
CITY                          )   SS: 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
COUNTY OF ~~WARRICK~~ WINCHESTER )

Sworn to and subscribed in my presence on this 20th day of March, 2017.

_____
NOTARY PUBLIC

```
CYNTHIA N KEEFER
NOTARY PUBLIC
REGISTRATION # 7536791
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
Nov 30 2021
```

7