UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| FREEDOM ORDNANCE MFG., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:16-cv-243-RLY-MPB |
| | ) | |
| THOMAS E. BRANDON | ) | |
| DIRECTOR | ) | |
| BUREAU OF ALCOHOL TOBACCO | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |

**FREEDOM'S RESPONSE BRIEF IN OPPOSITION TO ATF'S CROSS-MOTION
FOR SUMMARY JUDGMENT / REPLY BRIEF IN SUPPORT OF
FREEDOM'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, Freedom Ordnance Mfg., Inc. ("Freedom"), by and through

counsel, to submit the following reply brief in support of its motion for summary judgment on its

claims against the Defendant, Thomas Brandon, Director of the Bureau of Alcohol Tobacco

Firearms and Explosives ("ATF") (Docket 23) and response in opposition to ATF's cross-motion

for summary judgment (Docket 27).

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ii

TABLE OF AUTHORITIES iii

INTRODUCTION 1

ARGUMENT 1

I.     INFORMAL ATF FIREARM CLASSIFICATION LETTERS ARE ENTITLED     1
       TO ONLY LIMITED DEFERENCE.

II.    THE DETERMINATIVE FACT IN THIS CASE IS NOT A QUESTION     3
       OF SCIENTIFIC ANALYSIS OR INTERPRETATION.

       A.    A Device Is Not A Machinegun Unless It Enables A Firearm To Fire     3
             More Than One Round Per "Single Function Of The Trigger."

       B.    "Single Function Of The Trigger" Is Well-Defined And Objectively Provable.   3

             1.    A Firearm's Overall Rate Of Fire Is Unrelated To The Question Of     4
                   Whether It Is A Machinegun.

             2.    Use Of Continual Pressure With A Trigger Reset Device Does Not     5
                   Make A Firearm A Machinegun.

III.   ATF'S CLASSIFICATION RULING IS ARBITRARY AND CONTRARY TO     7
       LAW.

       A.    The Administrative Record Demonstrates Clearly How The ERAD Operates.   7

       B.    The Processes At Work In A "Bump Fire" Or "Slide Fire" Device Are     9
             Virtually Indistinguishable From The Processes At Work In The ERAD.

       C.    The Processes At Work In A Tac-Con 3MR Device Are Virtually     10
             Indistinguishable From The Processes At Work In The ERAD.

       D.    Nothing In The Administrative Record Supports A Comparison Of The     12
             ERAD To A Traditional Machinegun, Trigger Activator, Minigun, Etc.

       E.    Nothing In The Administrative Record Supports A Comparison Of The     13
             ERAD To The Akins Accelerator.

IV.    THE ADMINISTRATIVE RECORD IS SUFFICIENT TO GRANT FREEDOM'S    13
       REQUESTED RELIEF.

CONCLUSION    15

Certificate of Service    17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Akins v. United States*                                                        3
       312 Fed. Apx. 197 (11th Cir. 2009)

*Innovator Enters. v. Jones*                                                    2
       28 F. Supp. 3d 14 (D. D.C. 2014)

*Sig Sauer v. Jones*                                                           1
       826 F.3d 598 (1st Cir. 2016)

*Skidmore v. Swift & Co.*                                                      2
       323 U.S. 134 (1944)

*Staples v. United States*                                                     4
       511 U.S. 600 (1994)

*United States v. Camp*                                                       12
       343 F.3d 743 (5th Cir. 2003)

*United States v. Carter*                                                     12
       465 F.3d 658 (6th Cir. 2006)

*United States v. Fleischli*                                                  11
       305 F.3d 643 (7th Cir. 2002)

*United States v. Mead Corporation*                                           2
       533 U.S. 218 (2001)

*United States v. One TRW, Model M14, 7.62 Caliber Rifle*                      2
       294 F. Supp. 2d 896 (E.D. Ky. 2003)

**Statutes**

5 U.S.C. § 706(2)(A)                                                           1

## INTRODUCTION

The only question properly before this Court is whether Freedom's ERAD device enables a firearm to fire more than one round with "a single function of the trigger" -- a phrase that ATF itself has both defined and applied. If the ERAD enables a firearm to fire more than one round per a single function of the trigger, then it is a "machinegun." If it does not, then the ERAD is not a "machinegun," and FTISD's classification must be overturned.

Here, in view of the law and ATF's own long-standing definitions, ATF's classification of the ERAD as a machinegun marks an arbitrary and inexplicable departure from the clear language of the law and decades of consistent application of it.  Because the ERAD does not enable a firearm to fire more than one round per single function of the trigger, it is not a machinegun and ATF's classification should be overturned.

## ARGUMENT[1]

## I.    INFORMAL ATF FIREARM CLASSIFICATION LETTERS ARE ENTITLED TO ONLY LIMITED DEFERENCE.

The APA requires that the Court "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See,* 5 U.S.C. § 706(2)(A); *Sig Sauer v. Jones*, 826 F.3d 598, 601 (1st Cir. 2016) ("If the decision will be based on the administrative record, the issue before the court will ordinarily be the legal question as to whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") However, acknowledging the informal nature of ATF's firearm classification process, Courts have determined that ATF classification letters are entitled to only limited deference, and that it is

---

[1]    Although ATF's brief references a November 2015 submission, for the sake of clarity -- and this is not believed to be in dispute -- it is ATF's classification of the April 2016 submission that is at issue in the present case.

ultimately up to the Court to judge the persuasiveness of ATF's position. *See,* e.g., *Innovator Enters. v. Jones*, 28 F. Supp. 3d 14, 24 (D. D.C. 2014).

In giving ATF's classification decision only limited deference, the Court in *Innovator* pointed to the Supreme Court's indication that Courts are not required to simply rubber-stamp agency decisions in the manner that ATF would have the Court do here:

> [F]air measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position . . .

*See, United States v. Mead Corporation*, 533 U.S. 218, 229 (2001).  Applying *Mead* and refusing to apply *Chevron* deference to ATF's informal classification processes, the Court in *Innovator* applied a *Skidmore* level of deference instead, acknowledging that agency interpretation is entitled to "respect," but only to the extent that it has the "power to persuade." *Id.,* at 235, *quoting Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

To assess the persuasiveness of ATF's ruling in *Innovator*, the Court made its own determination of whether ATF failed to "articulate a satisfactory explanation" for its decision and failed to "examine the relevant data," ultimately deciding that it had not. *See, Innovator Enters. v. Jones*, 28 F. Supp. 3d at 26; *see also, United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 294 F. Supp. 2d 896 (E.D. Ky. 2003) at (applying *Skidmore* deference and looking to "longstanding ATF rulings" among other factors to assess whether ATF's classification was arbitrary, citing a detailed report of Richard Vasquez -- whose analysis in favor of Freedom in the present case, coincidentally, ATF is asking the Court to ignore because it confirms their departure from the law -- to determine that ATF had in that case met its burden.)

Here, Freedom is asking the Court to examine the Administrative Record and determine whether the Court is persuaded -- looking at the clear language of the law and longstanding ATF interpretations -- that the ERAD enables a firearm to fire more than one round per "single function of the trigger" as that term has been routinely applied over the years. It does not, and ATF's classification of the ERAD as a machinegun is nothing if not arbitrary and contrary to law. It is therefore within the authority of this Court to hold ATF's classification unlawful and set it aside.

## II.   THE DETERMINATIVE FACT IN THIS CASE IS NOT A QUESTION OF SCIENTIFIC ANALYSIS OR INTERPRETATION.

### A.   A Device Is Not A Machinegun Unless It Enables A Firearm To Fire More Than One Round Per "Single Function Of The Trigger."

"A machinegun is a weapon that fires 'automatically more than one shot, without manual reloading, by a single function of the trigger.'" *See, Akins v. United States,* 312 Fed. Apx. 197, 200 (11th Cir. 2009); *citing* 26 U.S.C. § 5845(b). Moreover, a machinegun is also any "combination of parts designed and intended for use in converting a weapon into a machinegun." *See,* 26 U.S.C. 5845(b).  Thus, the Court's analysis of ATF's classification hinges on whether ATF can support a finding with actual facts -- not just empty conclusions -- from the Administrative Record showing that the ERAD enables a firearm to fire more than one round per single function of the trigger.  If ATF cannot do so, its classification must be overturned.

### B.   "Single Function Of The Trigger" Is Well-Defined And Objectively Provable.

Curiously, rather than even acknowledge its prior, decades-long interpretation of "single function of the trigger" in firearm classification matters, ATF ignores such altogether and merely references Webster's Dictionary and a thesaurus instead to reach a watered-down definition that can mean nearly anything or nothing at all. "Single function of the trigger," however, is clearly

3

defined and objectively provable, relating entirely to the actual functioning of a firearm's mechanisms.  For instance, ATF and courts have observed that, at the very least, the pulling of a trigger from its forward position to its backward position constitutes a "function." *See, e.g., Staples v. United States,* 511 U.S. 600 (1994).

ATF has further clarified the meaning of "single function of the trigger" by holding that both the pulling of the trigger and the release of the trigger are separate functions such that a firearm may discharge one round upon the trigger's pull and a separate round upon the trigger's release without being classified a machinegun. *See,* e.g., Exhibit A (Two-Stage Trigger Letter). Recent application of such with regard to binary/two-stage triggers did not require a novel interpretation, but rather was the application of a decades-old interpretation of "single function of a trigger" to mean "single movement of a trigger" such that the resetting is a second function. *See,* AR 0636-0637: ATF Memorandum September 28, 1989 ("Firearms Technology Branch interprets the phrase "single function of the trigger" to mean a single <u>movement</u> of the trigger, whether that movement is the pull of the trigger or the release of the trigger.")(emphasis in original). A "function" of the trigger for purposes of the analysis is a forward or rearward movement of the trigger – each being a separate function.

The determinative issue of whether the ERAD constitutes a machinegun is whether it enables a firearm to fire more than one round per single function of the trigger: nothing more, nothing less. ATF's memorandum, however, focuses almost entirely on matters that are wholly irrelevant to this question instead of squarely addressing the one question that matters.

1.  <u>A Firearm's Overall Rate Of Fire Is Unrelated To The Question Of Whether It Is A Machinegun.</u>

ATF's memorandum makes repeated reference to rates of fire (in rounds per minute) throughout its brief to "support FTISB's finding that it converted the semiautomatic firearm into

a machinegun." *See,* e.g. Docket 28, pgs, 4, 13, 16, and 20.  ATF even goes so far as to argue, without citation to anything in the Administrative Record or anything in the law, that any firearm that can be made to shoot more than 120 rounds per minute -- or perhaps 45 rounds per minute -- must necessarily be a machinegun. *Id.,* pg. 16, fn. 4. However, the question is not how many rounds per minute a firearm may be made to fire or whether that number exceeds some imagined maximum, but rather how many rounds a firearm may be made to fire per "single function of the trigger."

ATF has classified numerous items that enable firearms to shoot far more than its arbitrary 120 rounds per minute as non-machineguns. In fact, both the TacCon trigger and the Slide Fire, devices that assist with trigger reset and are not classified as machineguns by ATF, advertise a 600+ rounds per minute rate of fire. AR 0021, The reason why the TacCon trigger and Slide Fire were classified as non-machineguns despite the rates of fire that they enable a firearm operator to achieve is because the only question that matters is how many rounds they fire per single function of the trigger.  That ATF wants this Court to focus on this irrelevant issue speaks volumes.

### 2.   Use Of Continual Pressure With A Trigger Reset Device Does Not Make A Firearm A Machinegun.

ATF's memorandum makes repeated reference to the application of constant pressure to function the ERAD as though the constant pressure somehow alters the functionality of the firearm.  Notably, other devices that enable a shooter to obtain a higher rate of speed than the ERAD require the application of constant pressure as well and have rightly been deemed not to be machineguns because the firearms' triggers still function.  Freedom addressed a number of these in its opening brief, but one ATF ruling specifically acknowledges that a firearm is not

Case 3:16-cv-00243-RLY-MPB   Document 32   Filed 08/31/17   Page 10 of 21 PageID #: 193

necessarily a machinegun simply because continuous pressure may be used to initiate and maintain a firing sequence, as long as the there is only one round shot per trigger function:

> [A]s a shot is fired, an intermediate amount of pressure is applied to the handguard with the support hand, and the receiver assembly will recoil rearward far enough to allow the trigger to mechanically reset. Continued intermediate pressure applied to the handguard will push the receiver assembly forward until the trigger re-contacts the shooter's stationary firing hand finger, allowing a subsequent shot to be fired. … each shot being fired by a single function of the trigger.

*See,* AR 0332-0338 (emphasis added).  The only differences ATF can point to between this non-machinegun and the ERAD is that the continuous pressure is applied to the forend of the gun with the non-trigger hand and the power employed to assist in trigger reset is recoil. Legally, that is no difference at all.

Just as with other devices already declared to be a non-machinegun, the ERAD enables a shooter to initiate a series of trigger pulls by applying continued pressure yet still requiring a forward movement (function) firearm's trigger to accomplish trigger reset in order to fire a subsequent round on a subsequent rearward movement (function).  The only distinction -- that bump fire and other devices use gas/recoil energy to facilitate the trigger reset while the ERAD uses electrical energy to facilitate the trigger reset -- is a distinction without a difference.  Just as with the bump fire and other devices, each shot with the ERAD requires a subsequent trigger pull following an assisted reset to fire a subsequent round.

ATF even goes so far as to say "[a]s long as the trigger is depressed, the firearm continues to fire until either the trigger finger is removed, the firearm malfunctions, or it runs out of ammunition." (AR 0073).  That is not accurate.  Notably absent is any reference in the record to what actually happens when the trigger is pulled and held rearward prohibiting the trigger from resetting. Not surprisingly, when the ERAD is employed and depressed such that the

6

firearm's trigger is pulled, the firearm will fire only one shot unless the ERAD overcomes the force of the shooter's trigger finger to allow the trigger to reset so that it may be pulled a second time.[2]  Nothing in the Administrative Record suggests that a pull of the trigger (irrespective of whether the "trigger" is the ERAD or the actual trigger) will discharge more than one round unless first the forward force of the ERAD against the trigger finger is sufficient to cause a forward movement of distance sufficient to permit an actual resetting (a/k/a a second function of the trigger per ATF's definition) thus enabling a second shot with a human-powered rearward pull.

### III.   ATF'S CLASSIFICATION IS ARBITRARY AND CONTRARY TO LAW.

####   A.   The Administrative Record Demonstrates Clearly How The ERAD Operates.

The Administrative Record contains two videos that seek to demonstrate how the ERAD works and what takes place between each subsequent shot.  The first video, produced by ATF, is seven seconds long and shows nothing other than the rapid firing of rounds which, as discussed above, is irrelevant to the analysis of whether the ERAD may be properly classified as a machinegun.  The second video, however, produced by Freedom, illustrates carefully precisely what the ERAD does and what it does not do and is vital to this Court's analysis:

| Time | EVIDENCE |
|------|----------|
| 2:00 – 2:30 | The ERAD cannot apply any rearward pressure. |
| 2:30 – 2:51 | The ERAD only pushes itself and the shooter's finger away from the trigger. |
| 4:00 – 5:00 | The ERAD forces the shooter's finger forward and provides no non-human force to assist in subsequent pulls of the trigger. |
| 7:00 – 11:45 | The ERAD is directly comparable to the SlideFire stock which ATF has declared not to be a machinegun.  Both the SlideFire stock and the ERAD enable a user to initiate a firing sequence by application of constant force which, when combined with opposing energy (cartridge energy for the |

---

[2]    While not in the Administrative Record, Freedom has tested what occurs when the ERAD is employed, the firearm's trigger is pulled, and the shooter resists the reset motion of the ERAD.  Not surprisingly, the firearm shoots one round and does not shoot another round until the shooter allows the trigger to reset and pulls the trigger a subsequent time.

|  | SlideFire stock as opposed to electric energy for the ERAD) facilitates the rapid resetting of the trigger so that a subsequent function of the trigger may initiate the firing of a subsequent round. |
|---|---|
| 11:45 – 11:50 | Full-Speed Demo. of SlideFire device classified as a non-machinegun. |
| 11:50 – 11:55 | Full-Speed Demo. of ERAD classified by ATF as a machinegun. |
| 11:56 – 12:24 | Slow-Motion Demo. of SlideFire device classified as a non-machinegun. |
| 12:25 – 12:53 | Slow-Motion Demo. of ERAD classified by ATF as a machinegun.  Video demonstrates the firearm's trigger as well as the ERAD device being pulled by human power to fire a single round, whereupon the ERAD device fully extends, allowing the firearm's trigger to reset (two functions of the trigger) before human power is used to pull the firearm's trigger again (third function of the trigger) in order to discharge a second round. |
| 12:54 – 13:20 | Slow-Motion Close-Up Demo. of SlideFire device classified as a non-machinegun.  The shooter applies constant pressure on the forend of the firearm and constant rearward pressure on the finger rest. |
| 13:21 – 13:45 | Slow-Motion Close-Up Demo. of ERAD classified by ATF as machinegun. |
| 13:56 – 14:14 | Controlled single shot firing with the ERAD activated. |

The video evidence does not show a "reciprocating" device wherein the firing sequence is "perpetuated automatically" as ATF erroneously claims in its brief (pg. 5) and in its classification letter (AR 0073).  Instead, the video evidence shows a device that does nothing but use battery power to push the shooter's finger forward to allow the trigger to reset so that the shooter can use human power to pull the trigger again if he so chooses.[3]  A firearm with the ERAD attached fires a round upon trigger pull (first function), resets when the trigger finger and the reset bar move into the forward position (second function), and requires human energy to fire a subsequent round upon a subsequent trigger pull (third function).  Even if the reset bar "is" the trigger as ATF insists, it resets as well and requires a subsequent pull to fire a subsequent round with the same end result that the firearm is not a machinegun.

---

[3]    This is true irrespective of whether the "trigger" is the firearm's actual trigger or the ERAD device itself that ATF has dubbed a "primary trigger."  Both must be pulled to fire a shot and pulled again after reset -- because they cannot pull themselves -- to fire a second shot.

**B.**     **The Processes At Work In A "Bump Fire" Or "Slide Fire" Device Are Virtually Indistinguishable From The Processes At Work In The ERAD.**

Both the ERAD and bump fire devices enable a user to experience an increased rate of fire, with ERAD rates of fire actually being lower than the rates of fire that bump fire devices[4] that ATF has declared not to be machineguns.[5] Both ERAD and bump fire devices enable the shooter to initiate a firing sequence through application of continuous pressure.[6] Both the ERAD and bump fire devices use non-human force to expedite trigger reset putting the user in a position to again pull the firearm's trigger.   Nonetheless, ATF's brief -- without any evidence in the Administrative Record to support it -- sets forth three baseless arguments in an attempt to create a distinction where there is none:

| ATF Argument | Freedom's Response |
|---|---|
| Unlike bump fire devices, "the ERAD does not require any such skill or input from the shooter" while "the rapid fire sequence in bump firing is contingent on shooter input, rather than mechanical input." | The only test of whether a firearm is a machinegun is how many rounds it fires per single function of the trigger, not whether a particular level of "skill" is required to operate it.  Nonetheless, ATF offers no explanation of their claim that the ERAD's rapid fire (initiated by continuous pressure) is any less a result of shooter input than a bump fire device's rapid fire (initiated by continuous pressure). Where is there any evidence in the Administrative Record to support this distinction? |
| Unlike bump fire devices, the ERAD requires a user to make a "conscious decision" to cease rapid fire. | The only test of whether a firearm is a machinegun is how many rounds it fires per single function of the trigger. Nonetheless, offers no explanation how a decision to cease applying forward pressure to a firearm using a bump fire device is any less of a "conscious decision" than a user of the ERAD device deciding to cease applying rearward pressure. Where is there any evidence in the Administrative Record to support this distinction? |

---

[4]     *See,* (Docket 24-2 and 24-4.

[5]     Without any citation to the Administrative Record or anything else, ATF claims that bump-firing enables a user to simulate "the effect of an automatic firearm when performed with a high level of skill and precision by the shooter."  While the level of skill necessary to be able to obtain rapid-fire results with a bump fire device is as irrelevant as the rate of fire, a Google search of "first time bump fire" yields numerous videos refuting ATF's unsupported claim.  *See,* e.g., https://www.youtube.com/watch?v=TI3occOYH7g.

[6]     As demonstrated with the ERAD, the user can fire a single round at a time or else employ continuous pressure to initiate a rapid sequence of trigger pulls.  Curiously absent from ATF's analysis and its record is any discussion or evidence concerning whether or how a bump fire device can do the exact same thing.

| Unlike bump fire devices, a user of the ERAD cannot control the precise number of shots fired while using continuous pressure. | The only test of whether a firearm is a machinegun is how many rounds it fires per single function of the trigger. Nonetheless, is ATF claiming that a user rapid firing using a bump fire device any more able to "control the precise number of shots fired while using continuous pressure?" Where is there any evidence in the Administrative Record to support this distinction? |
|---|---|

### C.   The Processes At Work In A Tac-Con 3MR Device Are Virtually Indistinguishable From The Processes At Work In The ERAD.

Clearly at a loss for any legitimate means of distinguish the Tac-Con 3MR trigger from the ERAD in terms of its functioning, ATF buries its analysis of this device in a single paragraph beginning at the end of page 22 of its brief.  The 3MR trigger is, just that, a trigger. *See,* Docket 24-3.[7] While ATF's claim that the ERAD is itself actually a "primary trigger" is disputable, that the 3MR trigger is a trigger is undeniable. The 3MR trigger uses non-human energy from the fired cartridge to mechanically force the shooter's finger forward following each shot. *Id.*  This, of course, is precisely what the ERAD does except by use of battery power instead of the power of the fired cartridge.  This force "allows the trigger to reset rapidly." *Id.*  So rapidly, in fact, that the Tac-Con 3MR is advertised to enable shooters to fire 600+ rounds per minute. *See,* AR 0021.

ATF notes that the mechanisms that operate to press a user's trigger finger forward in the 3MR are internal (with the obvious exception of the trigger itself).  Notably, so are the mechanisms that operate to press the ERAD user's trigger finger forward (with the obvious exception of the reset bar).  ATF further notes that the 3MR does not run on a motor, but nothing in their argument or the Administrative Record is offered as to why that matters under the law -- because it does not.

---

[7]     With regard to ATF classification rulings submitted by Freedom, ATF does not appear to be challenging the Court's consideration of such, having moved to strike only the two affidavits.  To the extent that ATF challenges such, Freedom maintains that they should have been part of the Administrative Record – especially as they relate to devices that Freedom specifically called to ATF's attention prior to its ruling. *See,* e.g., AR0023.  Such are necessary for effective judicial review and analysis of the issues before the Court and they were almost certainly (or should have been) considered by ATF, both exceptions recognized under *Overton Park*.

Perhaps most curiously, ATF argues that "the shooter is still required to <u>release</u> the trigger to fully reset the trigger" when using a 3MR trigger.  That attempt to differentiate the 3MR from the ERAD raises two questions: 1) what does ATF mean when it claims that a user of the 3MR trigger must "release" the trigger in order for it to fully reset, and 2) what is such a claim based on? There is no citation to any evidence in the Administrative Record or anywhere else that the 3MR enables a user to achieve a desired rapid rate of fire by any other means than, as with the ERAD, applying consistent rearward pressure.  For ATF's position on the 3MR to make any sense, it must have acknowledged that forward movement of the trigger accomplished the trigger reset so that a subsequent round was fired, and the subsequent pull -- even with constant rearward pressure -- was a separate and distinct pull.

Like a user of the 3MR trigger that ATF has rightly declared not to be a machinegun, a user of the ERAD can operate a firearm either with constant rearward pressure for multiple shots or without constant rearward pressure for single shots. The 3MR and the ERAD both employ non-human force upon the user's trigger finger to move (function) the trigger forward a sufficient distance to allow the trigger to reset.  The 3MR and the ERAD both are incapable of aiding rearward pull and therefore require human force to again function the trigger to accomplish a subsequent firing.  The only differences are that the 3MR can accomplish reset faster than the ERAD and they use different types of power to assist reset -- neither of which are relevant factors for a machinegun classification. Yet for some unarticulated reason -- or, more likely, for real reason at all -- the 3MR has been classified as a non-machinegun and the ERAD classified as a machinegun.  This is the definition of arbitrary and contrary to law.

**D.**     <u>Nothing In The Administrative Record Supports A Comparison Of The ERAD To A Traditional Machinegun, Trigger Activator, Minigun, Etc.</u>

ATF's brief seems to suggest that somehow the ERAD might be comparable to devices that, by one movement of a trigger or push of a button, enable a firearm to discharge multiple rounds. For instance, ATF cites the case of *United States v. Fleischli*, 305 F.3d 643 (7th Cir. 2002)(involved a device wherein an operator could simply flip a switch to initiate an automatic firing sequence until the switch was moved into the off position thus firing multiple rounds with a single movement of the non-traditional trigger); *United States v. Carter*, 465 F.3d 658 (6th Cir. 2006)(defendant modified a firearm so that it could fire three rounds by one action of "pulling the bolt back and releasing it by hand" thus firing multiple rounds with a single movement of the non-traditional trigger); *United States v. Camp*, 343 F.3d 743 (5th Cir. 2003)(defendant created a device with a switch that would initiate firing of multiple rounds until the switch was turned off thus firing multiple rounds with a single movement of the non-traditional trigger.)

It is not entirely clear why ATF would spend pages addressing cases with triggers that are designed to fire multiple rounds with a single movement, although perhaps it is from the mistaken belief articulated in ATF's brief that "the shooter's finger does not pull the trigger each time to fire each shot, but instead pulls the trigger once and then remains stationary …" *See,* pg. 20. Of course, the actual video evidence demonstrates that the shooter's finger by no means "remains stationary." Just like a traditional machinegun operation where the trigger is pulled and held in place while multiple rounds fire, these cases cited by ATF illustrate that the common denominator for a firearm to be deemed a machinegun is the firing of multiple rounds with a single "function" (pull or movement) of the firearm's trigger. No evidence in the Administrative Record even remotely suggests that this is how the ERAD operates.

### E.   Nothing In The Administrative Record Supports A Comparison Of The ERAD To The Akins Accelerator.

The Akins Accelerator is a device that ATF deemed to be a machinegun.  Like non-machinegun bump fire devices, it used non-human energy to expedite reset of the firearm's trigger.  However, unlike non-machinegun devices, the Akins Accelerator further used non-human energy (springs) to force the trigger against the user's finger causing the weapon to discharge at a rate of 650 rounds per minute.  That is, as ATF acknowledges in its brief, the shooter's finger and the depressed trigger remain stationary and rearward while the internal workings of the Akins Accelerator -- inside the stock of the firearm -- continue firing until the shooter releases the trigger from its rearward position.  Only one rearward movement (function) of the trigger was required on the Akins Accelerator to initiate a firing of multiple rounds of ammunition.

The key differences between the ERAD and the Akins Accelerator are: 1) the ERAD requires a separate rearward pull of the trigger for each shot while the trigger and trigger finger remain rearward (stationary, e.g. no movement/function) with the Akins Accelerator, and 2) the ERAD does not use any non-human power to initiate subsequent firing whereas the Akins Accelerator uses spring power to maintain firing as long as the trigger remains depressed and stationary.  The reasons why the Akins Accelerator was classified as a machinegun merely highly the precise reasons why the ERAD should not have been.

## IV.   THE ADMINISTRATIVE RECORD IS SUFFICIENT TO GRANT FREEDOM'S REQUESTED RELIEF.

ATF does not want the Court to consider two affidavits submitted in support of Freedom's position.  First, ATF has asked the Court to disregard the affidavit of Richard Vasquez, the former Assistant Branch Chief and Acting Chief of ATF's Firearms Technology

Branch, i.e., the person who used to issue the final decisions on classifications such as the one at issue. Thus, it is not surprising that ATF does not want the Court to consider Mr. Vasquez' testimony that the ERAD does not enable a firearm to fire more than one round per single function of the trigger and was improperly classified as a machinegun.[8] That said, Mr. Vasquez' affidavit is provided to highlight the insufficiency of ATF's explanations and analysis as well as the inconsistency of ATF's application of the law. Second, ATF has asked the Court to disregard the affidavit of Michael Winge, Freedom Ordnance's owner and the designer of the ERAD. Similarly, Mr. Winge's affidavit sets forth how the ERAD functions and what it can and cannot do to affect a firearm to which it is installed.[9] Both of these affidavits raise issues that ATF either did not or cannot answer satisfactorily, and they should inform the Court's analysis as to the persuasiveness of ATF's informal classification decision.

Even if the Court disregards the Vasquez and Winge affidavits and their explanations, as ATF seems to acknowledge, the factual basis for their explanations is already in the record between Freedom's submission to ATF (AR0001-0007), Freedom's follow-up correspondence to ATF (AR0018-0024), Freedom's patent application (AR0025-0045), and Freedom's demonstration video (AR0046). The facts, frankly, are not in question. The only question is a question of law that this Court is empowered to decide: whether "single function of the trigger" still means what it has meant for decades and whether it was arbitrary and contrary to law for ATF to deviate from prior, consistent application of that term when classifying the ERAD. Thus,

---

[8]     In addition to providing the report relied upon in *Innovator*, Vasquez -- referred to in ATF's brief as Freedom's "so-called 'expert'" -- provided the pivotal testimony in *United States v. One M119 105mm Howitzer,* 2013 U.S. Dist. LEXIS 34710 (D. Ariz. 2013); *United States v. Williams,* 364 F.3d 556 (4th Cir. 2004); *United States v. Mullins,* 446 F.3d 750 (8th Cir. 2005); *Akins v. United States,* 2088 U.S. Claims LEXIS 208 (U.S. Ct. Fed. Claims 2008); and others.

[9]     Freedom submitted a supplemental affidavit of Michael Winge for the sole purpose of authenticating and affirming the content of Freedom's video that is already in the Administrative Record, as no part of the Administrative Record is sworn or otherwise subjected to customary tests for admissibility.

even if the Court elects not to, the record is more than sufficient to enable the Court to grant Freedom's requested relief.[10]

## **CONCLUSION**

ATF's classification ruling was arbitrary and contrary to law, jettisoning long-established principles to re-define "single function of the trigger" and, by extension, redefine "machinegun." Perhaps this is because the ERAD uses electric power to assist the firearm's reset rather than gas-powered recoil in other devices. Perhaps it is because the ERAD allows a shooter to achieve a high rate of fire, although other approved devices allow a shooter to achieve higher rates of fire. In the end, however, no evidence in the record enables ATF to "articulate a satisfactory explanation" for its classification decision, because there is no satisfactory explanation for arbitrarily and unilaterally redefining machinegun on an *ad hoc* basis. Nothing in the record supports ATF's conclusion, and ATF's classification ruling should be overturned.

DATED: August 31, 2017

/s/      Timothy R. Rudd
_____

Scott L. Braum *pro hac vice*
*Email*: slb@braumlaw.com
Timothy R. Rudd *pro hac vice*
*Email*: trr@braumlaw.com
SCOTT L. BRAUM & ASSOCIATES, LTD.
812 East Franklin Street, Suite C
Dayton, OH 45459
*Telephone*: (937) 396-0089
*Facsimile*: (937) 396-1046

---

[10] While the Administrative Record supports overturning ATF's classification ruling as arbitrary and contrary to law, it cannot support upholding it. Many of the arguments and attempts at distinguishing the ERAD from approved devices such as the 3MR and various bump fire devices are entirely unsupported in the Administrative Record. At the very least, if the Court does not rule in favor of Freedom, the matter should be remanded so that the parties may present evidence as to the unsupported claims that ATF is making in an attempt to justify its deviation from long-standing interpretation and application of the law.

Brent R. Weil, #12046-82
*Email*: bweil@k-glaw.com
7220 Eagle Crest Boulevard
Evansville, Indiana 47715
*Telephone:*      (812) 474-4400
*Facsimile:*      (812) 474-4414

ATTORNEYS FOR PLAINTIFF,
FREEDOM ORDNANCE MFG., INC.

## CERTIFICATE OF SERVICE

I hereby certify that Freedom's Response Brief In Opposition To ATF's Cross-Motion For Summary Judgment / Reply Brief In Support Of Freedom's Motion For Summary Judgment was served upon all counsel of record electronically via ECF on August 31, 2017.

/s/ Timothy R. Rudd

_____

Timothy R. Rudd